**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

STEVEN JAMES ERICKSON,

Petitioner,

v.

DAVID R. CRIST, Warden,

Respondent.

Civil No. 01-699 (JRT/SRN)

**ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE**

---

Steven J. Erickson, #186371, Minnesota Correctional Facility-Stillwater, 970 Picket Street North, Bayport, MN, 55003-1489, petitioner *pro se*.

Robert A. Stanich, Assistant Attorney General, OFFICE OF THE MINNESOTA ATTORNEY GENERAL, 525 Park Street, Suite 500, St. Paul, MN 55103, for respondent.

This matter is before the Court on Petitioner Steven Erickson's ("Erickson") objections to the Report and Recommendation of United States Magistrate Judge Susan Richard Nelson dated May 2, 2002.[1] The Court has conducted a *de novo* review of Erickson's objections, pursuant to 28 U.S.C. § 636(b)(1)(C) and D. Minn. LR 72.1(c)(2).

---

[1] On May 10, 2002, Erickson moved for additional time to file his objections, claiming that it would take him additional time to obtain the case law necessary to support his argument from the State Law Library. The Court notes that Erickson is proceeding *pro se*, and is incarcerated. Erickson's motion for additional time is granted, and the Court finds that Erickson's objections were timely filed.

FILED SEP 30 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD.
DEPUTY CLERK

For the reasons set forth below, the Court adopts the Report and Recommendation, and dismisses Erickson's § 2254 petition.

**BACKGROUND**

In May 1998, a state court jury in Mower County found Erickson guilty of first-degree murder, conspiracy to commit first-degree murder, and theft of three handguns. He was sentenced to life in prison for the murder conviction, and he received a concurrent sentence of one year and one day for the theft conviction. He is serving his sentence at the Minnesota Correctional Facility at Stillwater, Minnesota.

Around the time the jury reached its verdict, the trial judge, Judge Donald Rysavy, learned that the bailiff had spoken to at least one of the jurors during deliberations. Two days after the verdict was delivered, the trial judge conducted a hearing to determine what the bailiff said to jurors. Erickson's counsel attended that hearing, but Erickson was not present. After hearing testimony from the bailiff and the jury foreman – apparently the only juror to whom the bailiff spoke – the trial judge concluded that Erickson was not prejudiced by the bailiff's conduct.

Following his conviction and sentence, Erickson filed a direct appeal with the Minnesota Supreme Court. He claimed that the trial judge committed two errors in the hearing on the bailiff's conduct: (1) the judge did not interview all of the jurors in a formal "*Schwartz* hearing"[2] to determine whether the bailiff had caused any prejudice; and (2) the judge did not ensure that Erickson was present at the hearing. Erickson also

[2] A *Schwartz* hearing is a post-trial proceeding during which jurors can be questioned about events that arguably could have tainted their verdict. *See Schwartz v. Minneapolis Suburban Bus Co.*, 258 Minn. 325, 104 N.W.2d 301 (1960)

argued that the trial judge should not have required him to wear leg restraints during his trial without first ensuring that restraints were necessary. He asked the Supreme Court to remand his case to the trial court for a full *Schwartz* hearing on all these questions.

The Minnesota Supreme Court found that the trial court had erred by: (1) ordering Erickson to wear leg restraints without first providing a sufficient explanation for that order, (2) failing to conduct a full *Schwartz* hearing on the bailiff's contact with the jury, and (3) excluding Erickson from the limited hearing that was conducted on the bailiff's conduct. The Supreme Court remanded the case back to the trial court, instructing the judge to conduct a *Schwartz* hearing on those three issues. *See State v. Erickson*, 597 N.W.2d 897 (Minn. 1999) ("*Erickson I*").

The trial judge conducted a full *Schwartz* hearing, in which the bailiff and all twelve jurors appeared and were questioned. This time, Erickson was present for the proceedings. At the conclusion of the *Schwartz* hearing, the trial judge concluded that "[t]he jurors were unanimous that the bailiff's contact with them had no effect on their deliberations," and that the "bailiff's error . . . was harmless and did not prejudice defendant beyond a reasonable doubt." *State v. Erickson*, No. C1-98-1418, slip op. at 15, 18 (Minn. Dist. Ct. Sept. 17, 1999) (quotation marks omitted). The trial judge further concluded that the use of leg restraints on Erickson during trial was justified,[3] and that the leg restraints did not effect the trial's outcome.

[3] The trial judge reported that Erickson "in no uncertain terms: (1) told a witness's mother to 'GET the F*** out of the courtroom!' (2) threatened the county attorney, (3) was involved in confrontations with a jailer, and (4) was involved in confrontations with the prime State's witness, who was also involved in the murder." *State v. Erickson*, No. C1-98-1418, slip op. at 19 (Minn. Dist. Ct. Sept. 17, 1999)

After the *Schwartz* hearing, Erickson's case retuned to the Minnesota Supreme Court, which had retained jurisdiction over the case. *See State v. Erickson*, 610 N.W.2d 335 (Minn. 2000) ("*Erickson II*"). The supreme court first considered whether Erickson suffered any prejudice from the trial court's handling of the leg restraint issue. *Id.* at 337. The court stated that "[i]f the jurors were unaware of the restraint, the trial court's error in ordering the restraint [without explaining its justification] is not presumptively prejudicial." *Id* at 338. Having determined that there was no prejudice, the Supreme Court decided that it was "unnecessary to perform harmless error analysis." *Id.* The court next considered the extent of possible prejudice from the bailiff's improper contact with the jury, and concluded that "the verdict was not tainted by the prejudice caused by the bailiff's improper conduct." *Id.* at 339.

Erickson then filed the present habeas corpus petition, alleging that the Minnesota Supreme Court should have decided whether the use of leg restraints during his trial was harmless error and that his constitutional rights were violated because he was not present at the initial hearing on the bailiff's contact with the jury.

**ANALYSIS**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a State prisoner's application for habeas corpus relief cannot be granted for any claim that was adjudicated on the merits in state court, unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

When, as here, a petitioner challenges his confinement under § 2254, the federal court is not free to disregard the state court's factual determinations. Section 2254 mandates that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000).

## I. Leg Restraints

Erickson first objects to the Magistrate Judge's determination that the Minnesota Supreme Court properly determined facts and applied the law as a result of the *Schwartz* hearing on leg restraints. Erickson points to the Supreme Court's holding in *Erickson I* that the trial court erred by not justifying leg restraints, and claims that the State must prove by clear and convincing evidence that the ruling is not erroneous. Because the State has not done this, Erickson claims, the Court must examine whether the trial court's original error was inherently prejudicial.

Erickson's argument is flawed for two reasons. First, he ignores the Minnesota Supreme Court's ruling in *Erickson II*, which further addressed the issue of leg restraints. Second, Erickson misunderstands the burden of proof regarding "clear and convincing evidence." Respondent is not obligated to prove that the Supreme Court's ruling is

correct. Rather, Erickson has the burden of showing that the state court's factual determination is wrong. He must make this showing by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lee*, 222 F.3d at 442. Here, the relevant state court decision is the Minnesota Supreme Court's ruling in *Erickson II*, not *Erickson I* or the trial court's original erroneous decision to restrain Erickson without justification.

In *Erickson II*, the Supreme Court carefully examined evidence from the *Schwartz* hearing, reviewed the testimony of all the jurors, and determined that the jurors were not aware of the leg restraint in the courtroom. *Erickson II*, 610 N.W.2d at 337-38. This Court must, under the law, presume that the Supreme Court is correct, and that the jurors did not know of the restraint. Erickson can only rebut this presumption by showing clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Lee*, 222 F.3d at 442.

Erickson contends that he has shown such evidence. In his objections, he argues that one juror actually saw the restraints, while all the jurors saw him walking stiffly in the courtroom as a result of the leg restraints, "like a monster in a black and white horror film." (Obj. at 3.) Erickson's assertions conflict with the facts found in the record by the Supreme Court, but he does not explain nor offer evidence why his factual claims are correct while the Supreme Court's determinations are wrong. He offers only the mere assertion that his version of the facts is correct. While this may be a factual dispute, it is not clear and convincing evidence. *See Kinder v. Bowersox*, 272 F.3d 532, 545-46 (8th Cir. 2001) (denying habeas relief where defendant did not present clear and convincing evidence to rebut trial court's finding that jurors could not see defendant's shackled legs).

Therefore, Erickson has not rebutted the Supreme Court's finding. Because he has not met his burden under the law, his claim must fail.

The Minnesota Supreme Court also held in *Erickson II* that because the jurors were unaware of Erickson's restraint, there is no presumption of prejudice. *Erickson II*, 610 N.W.2d at 338. Because prejudice is impossible, the court found it unnecessary to examine whether the error was harmless. *Id.* Erickson maintains that the Court must perform a harmless error analysis, and argues that two United States Supreme Court opinions mandate such a result. *See Holbrook v. Flynn*, 475 U.S. 560 (1986); *Estelle v. Williams*, 425 U.S. 501 (1976). This Court, however, agrees with the Magistrate Judge that these cases do not require such an analysis.

The United States Supreme Court stated in *Holbrook* that "[w]henever a courtroom arrangement is challenged as inherently prejudicial . . . the question must be not whether jurors actually articulated a consciousness of some prejudicial effect, but rather whether an unacceptable risk is presented of impermissible factors coming into play." *Holbrook*, 475 U.S. at 570 (quotation marks and citation omitted). In this case, the Minnesota Supreme Court found that jurors did not articulate a consciousness of the leg restraints. More important, in so finding, the court determined that no unacceptable risk was presented of impermissible factors coming into play. *See Erickson II*, 338 N.W.2d at 33. Because the Minnesota Supreme Court determined that the trial court's original error caused no inherent prejudice, the error was, essentially, inherently harmless. Therefore, it was unnecessary to conduct a "harmless error" analysis under *Chapman v. California*, 386 U.S. 18 (1967). This Court finds that the Minnesota

Supreme Court's application of law was reasonable, and not inconsistent with any United States Supreme Court decision. Erickson's objections based on the leg restraints must therefore be overruled, and his petition on these grounds denied.

## II. Bailiff Misconduct Hearing

Erickson's second objection is that he was not physically present at the first bailiff misconduct hearing. The Minnesota Supreme Court held in *Erickson I* that the trial court erred by failing to include Erickson in the hearing, and ordered a new hearing to rectify the problem. *Erickson I*, 597 N.W.2d at 904. The trial court then conducted a full *Schwartz* hearing, at which Erickson was present and represented by counsel. Erickson maintains, however, that this Court must examine whether the original error was harmless beyond a reasonable doubt. Erickson is incorrect.

A fundamental element of § 2254 litigation is the exhaustion requirement, under which state prisoners must "give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). The United States Supreme Court has held that this requires state prisoners to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.*

This exhaustion requirement recognizes that state courts have the ability to resolve constitutional problems. If the state courts did not have such power, the requirement would be meaningless. In this case, Erickson pursued his claim about the bailiff's conduct through the state courts. The Minnesota Supreme Court identified his claim as a

constitutional error, and ordered it corrected. After the *Schwartz* hearing was conducted, the Supreme Court determined that it completely superseded the initial hearing, and thus cured any constitutional defect. Yet Erickson remains unsatisfied. He does not explain, however, how the Minnesota Supreme Court could have done any more to resolve the problem. Indeed, his chief complaint seems to be that the initial error happened at all. No court can change that fact, but courts can cure constitutional errors. The Minnesota Supreme Court did so by ordering the *Schwartz* hearing. As a result, there is no relief left for this Court to grant. Moreover, for a federal court to intervene after the state supreme court has provided relief would make a mockery of the § 2254 exhaustion requirement.

Erickson gave the state courts a fair opportunity to resolve his constitutional claim about the bailiff's conduct, and they resolved it. Erickson has not shown, or even alleged, that the Minnesota Supreme Court's handling of the bailiff's misconduct was contrary to, or involved an unreasonable application of any United States Supreme Court decision, or was based on any unreasonable determination of the facts. Therefore, this Court must conclude that the Minnesota Supreme Court's relief is sufficient, and no harmless error inquiry is required.

**ORDER**

Based on the foregoing, the submissions of the parties, and all of the files, records, and proceedings therein, the Court **OVERRULES** petitioners' objections to the Report and Recommendation [Docket No. 18] and **ADOPTS** the Report and Recommendation of the Magistrate Judge [Docket No. 15]. **IT IS HEREBY ORDERED** that:

1. Petitioner Steven Erickson's Motion For Extension of Time to File Objections [Docket No. 16] is **GRANTED**.

2. Petitioner Steven Erickson's State Petition for Writ of Habeas Corpus [Docket No. 1] is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: Sept 30, 2002
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.